FILED

JAN 1 4 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| LONNIE THOMPSON, | ) CASE NO.   1:19-CV-58 |
| Petitioner, | ) JUDGE SARA LIOI |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| CHARMAINE BRACY, Warden, | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

Petitioner, Lonnie Thompson ("Petitioner"), challenges the constitutionality of his conviction in the case of *State v. Thompson*, Cuyahoga County Court of Common Pleas Case No. CR-11-553649-A. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden Charmaine Bracy ("Respondent") filed her Answer/Return of Writ (R. 10), and Petitioner filed a Traverse. (R. 25), to which Respondent did not file a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

**I.  Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence."). The Eighth District Court of Appeals ("state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> [*P5] The state offered substantial evidence to show that Thompson, in conjunction with Janell Calloway, recruited people to take payroll checks that Thompson created and cash them at area locations of a national retail store. Calloway testified that her involvement with Thompson began in late 2006 or early 2007 when he provided her with two counterfeit payroll checks that she was able to cash in exchange for $500. A few days later, Calloway and another person met with Thompson and watched him fill out checks using a typewriter. Calloway was successful in cashing those checks and subsequently agreed to recruit other people to cash Thompson's counterfeit payroll checks.

> [*P6] As the enterprise grew, Calloway persuaded others to give her photocopies of their paychecks so Thompson could use those checks as templates for his counterfeit checks. In addition to real paychecks, Thompson would sometimes use business cards and duplicate them onto checks to make them look official. When Calloway found the recruits, she would give their names to Thompson and he would prepare the counterfeit checks. At the height of the operation, during the period from March 2008 to October 2008, Calloway estimated that she recruited approximately 100 people for Thompson's counterfeit check cashing scheme.

> [*P7] The police first learned about the fraud when one of the recruits gave them information in the hopes of lenient treatment in an unrelated criminal case. The recruit told police that Calloway accompanied her as she cashed two counterfeit payroll checks. The police spoke with the retailer's fraud investigator and learned that the retailer had been monitoring an unusually high number of counterfeit payroll checks that it had cashed. Because those checks sometimes used the name of the person cashing the checks (and either a driver's license or social security number), the police were able to work with the retailer and track down a number of the recruits and piece together the enterprise, including Calloway's participation.

> [*P8] The police spoke with Calloway and she agreed to cooperate with them and set up a sting in which she would give Thompson names provided to her by the police. She had second thoughts, however, and told Thompson about the sting. Two days later she told the police that she wanted to back out. The police hastily obtained a search warrant for Thompson's premises. They found a computer and printer, along with a black book containing names, addresses, and social security numbers of various individuals. They also found copies of legitimate payroll

checks taped to the underside of a dresser drawer.

[*P9] Viewing the evidence most favorably to the state, we conclude that a rational trier of fact could find that the state offered evidence going to each element of forgery as charged under R.C. 2913.31(A)(3). Importantly, Thompson was not charged with forging the writing of another under subdivision (A)(1) of R.C. 2913.31 — he was only charged with uttering, or delivering, a writing that he knew to have been forged. So rather than having to offer evidence to show that Thompson actually forged the checks, the state only had to offer evidence to show that Thompson, in facilitating a fraud, knew the checks he gave to Calloway were forged. That being the case, the state offered ample evidence to show that during the time frame from March 2008, to September 2008, Thompson knew the checks he gave to Calloway were forged.

[*P10] The object of the criminal enterprise was to negotiate counterfeit payroll checks. Evidence showed that Thompson prepared the checks using information that he asked Calloway to obtain from her recruits. At the beginning of the enterprise, he drove Calloway and her recruits to the retail locations to cash the counterfeit checks. Even after his relationship with Calloway strengthened to the point where she alone accompanied the recruits, he kept track of the checks and told Calloway to return all uncashed checks to him. This was done so that he could record check numbers to ensure that they were not repeated. Not wanting to repeat check numbers was evidence that Thompson knew that the checks were counterfeit.

[*P11] On one occasion, Calloway was arrested while using a phony identification when trying to cash one of the counterfeit checks. She called Thompson to tell him that she and the recruits had been stopped by the police. Thompson told her, "whatever [you] do, don't let them get that paper." She said that the recruits actually ate the checks. Thompson's directive that Calloway and her recruits not let the checks fall into the hands of the police manifested his understanding that the checks were counterfeit.

[*P12] In addition to evidence regarding the nature of the criminal enterprise, Thompson instructed Calloway on how to fabricate accounts for the checks. For example, he told her to find someone with a legitimate payroll check and photocopy the paycheck so he could use it as a template for a counterfeit check. The police were able to confirm this testimony when a search of Thompson's residence uncovered two legitimate paychecks, from different companies, that he had hidden. Thompson did not work for either company, so the jury could have considered the checks as circumstantial evidence that he was using them in furtherance of a scheme to cash counterfeit payroll checks.

*State v. Thompson ("Thompson I")*, 2014-Ohio-202, ¶¶ 5-12, 2014 Ohio App. LEXIS 186, 2014

3

WL 4748364 (Ohio Ct. App., Jan. 23, 2014).

## II.  Procedural History

### A.  Conviction

On August 29, 2011, the Cuyahoga County Grand Jury issued an indictment charging

Thompson and twenty-four (24) co-defendants with the following: one count of Engaging in a

Pattern of Corrupt Activity in violation of Ohio Revised Code ("O.R.C.") § 2923.32(A)(1); thirty

counts of Forgery in violation of O.R.C. § 2913.31(A)(3); one count of Telecommunications

Fraud in violation of O.R.C. § 2913.05(A); twelve counts of Identity Fraud in violation of O.R.C.

§ 2913.49(B)(1); five counts of Identity Fraud in violation of O.R.C. § 2913.49(B)(2); and, one

count of Theft in violation of O.R.C. § 2913.02(A)(3). (R. 10-1, PageID# 95-118; Exh. 1).

Thompson, represented by counsel, pleaded not guilty to all charges. (R. 10-1, Exh. 2). Except

for two forgery counts for which the State entered a Nolle Prosequi, the jury found Thompson

guilty as charged. (R. 10-1, PageID# 120-121; Exh. 3).

On February 26, 2013, the court then sentenced Thompson to an aggregate prison term of

thirty-two (32) years and six months. (R. 10-1, PageID# 120-121; Exh. 3).

### B.  Direct Appeal

On March 11, 2013, Petitioner, through new counsel, filed a Notice of Appeal with the state

appellate court. (R. 10-1, PageID# 122, Exh. 4). Petitioner raised the following assignments of

error:

1.  The trial court erred in denying Appellant's motion for acquittal pursuant
    to Criminal Rule 29 where there was insufficient evidence.

2.  Appellant's convictions were against the manifest weight of the evidence.

3.  The trial court erred in not finding Appellant's convictions arise from a
    continuing course of conduct that requires their merger for sentencing

purposes under R.C. 2941.25 and *Johnson*.

4. The trial court abused its discretion in imposing a sentence of 32½ years on the Defendant and the trial court erred in imposing sentence upon the Defendant that was not consistent with sentences for similar offenders.[1]

(R. 10-1, PageID# 129-145, 164-171; Exhs. 5 & 7).

On January 23, 2014, the state appellate court affirmed the convictions but reversed in part and remanded to the trial court for resentencing consistent with the appellate court's opinion. (R. 10-1, PageID# 181-195; Exh. 9). Specifically, the state appellate court found that Counts 30 and 31 should have merged at sentencing and remanded "for resentencing at which time the state may choose which of the two offenses it will pursue for sentencing." *Id.* at PageID# 192.

On March 5, 2014, Petitioner, *pro se*, filed a notice of appeal with the Ohio Supreme Court. (R. 10-1, PageID# 196). In his Memorandum in Support of Jurisdiction, Petitioner set forth the following seven propositions of law:

I.    The Appellant is prejudicially deprived of his Sixth and Fourteenth Amendment right to a criminal appeal without effective assistance of appellate counsel.

II.    The Appellant is prejudicially deprived of his Fourteenth Amendment Due Process rights with his conviction on insufficient evidence to prove every element of the crimes beyond a reasonable doubt.

III.    The Appellant is prejudicially deprived of his Sixth Amendment right to assistance of counsel in all critical stages of the criminal prosecution not objecting to the various parts of the jury instructions, and requesting an instruction regarding the "enterprise" element of engaging in a pattern of corrupt activity.

IV.    The trial court's jury instructions prejudicially deprived Appellant of his right to a fair and impartial jury trial as guaranteed by the Sixth and Fourteenth Amendments.

---

[1] The fourth assignment of error was filed by Petitioner *pro se* in a separate supplemental brief. (R. 10-1, PageID# 164-170; Exh. 7).

5

V.     The Appellant is prejudicially deprived of his Sixth and Fourteenth Amendment rights having his indictment amended to include a new offense without the discharge of the jury or counsel move for discharge or continuance.

VI.    The Appellant is prejudicially deprived of his Sixth Amendment right to assistance of counsel in all critical stages, not communicating all formal offers from the prosecution to accept a plea favorable to the Appellant.

VII.   The trial court erred and abused its discretion imposing a sentence of 28½ years upon the Appellant, which was not consistent with sentences for similar crimes committed by similar offenders in violation of the Eighth and Fourteenth Amendments.

(R. 10-1, PageID# 198-227; Exh. 11).

On May 28, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. Rule 7.08(B)(4). (R. 10-1, PageID# 228; Exh. 12).

Petitioner filed a motion for reconsideration (R. 10-1, PageID# 230-233; Exh. 13), which the Supreme Court of Ohio denied without opinion. (R. 10-1, PageID# 239; Exh. 15).

## C.   First Petition for Postconviction Relief

While his direct appeal was pending, Thompson, *pro se*, filed a Petition to Vacate or Set Aside Judgment/Sentence on June 28, 2013, raising the following arguments:

1.    Ineffective Assistance of Counsel for failure to file Motion to Dismiss prior to trial on Speedy Trial Grounds.

2.    Trial Court violated Defendant's United States Constitutional Rights under the 6th and 14th Amendment and his State Constitutional Rights under Section 10, Article 1 of the Ohio Constitution.

(R. 10-1, PageID# 240-245; Exh. 16). On August 26, 2013, the Court denied the motion for post-conviction relief. (R. 10-1, PageID# 262; Exh. 19). Respondent represents that Thompson did not appeal this decision.

**D.    Application to Reopen Direct Appeal**

On April 7, 2014, Petitioner, *pro se*, filed an application to reopen his direct appeal

pursuant to Ohio App. R. 26(B). (R. 10-1, PageID# 411-475; Exh. 36). Petitioner claimed that

appellate counsel had provided ineffective assistance by not raising the following assignments of

error on appeal:

1.    The appellant counsel, Robert Botnick, failed to raise the ineffective
      assistance of trial counsel on direct appeal, which is a U.S. Constitutional
      Amendment violation of the Sixth and Fourteenth Amendments.

2.    The Appellant was prejudicially deprived of his Sixth and Fourteenth
      Amendment rights having his indictment amended to include a new
      offense (not a lesser included offense) without the discharge of the jury or
      counsel to move to discharge or a continuance or a grand jury.

3.    The Appellant was prejudicially deprived of his Sixth Amendment right to
      assistance of counsel in all critical stages by communicating all formal
      offers from the prosecution to accept a plea favorable to the Appellant.

4.    The appellate counsel should have but due to his ineffective assistance,
      addressed the extremely disproportionate sentence. The appellate counsel
      ineffectively raised allied offenses instead of the constitutionality of the
      extremely cruel disproportionate sentence.

5.    Appellate counsel did not raise the issue of the trial counsel's
      ineffectiveness to raise the error in the jury instructions given, a reversible
      error. The trial court's jury instructions prejudicially deprived Appellant of
      his right to a fair and impartial jury trial as guaranteed by the Sixth and
      Fourteenth Amendments.

6.    Due to appellate counsel's ineffective assistance, arguing the merging of
      Counts 30 and 31 of the indictment when these two counts were already
      merged in the record of the sentencing transcripts in the instant case.

7.    The Eighth District Court of Appeals, in its' Opinion, plainly presented
      Attorney Botnick ineffective by not differentiating his pretentious
      argument of insufficient evidence, and incorporating the argument into his
      manifest weight of evidence is a disregard to App. R. 16(A)(7).

8.    Appellant counsel Botnick stated to the Court through his appeals brief
      presented erroneous and incorrect information which led this Honorable

> Court to making a decision that was incorrect and harmful to the
> Appellant.

(R. 10-1, PageID# 411-475; Exh. 36).[2]

On September 23, 2014, the state appellate court denied Thompson's application to reopen, concluding that Thompson's application was barred by *res judicata* as well as meritless. (R. 10-1, PageID# 505-516; Exh. 41).

On November 7, 2014, Thompson, *pro se*, filed a notice of appeal with the Ohio Supreme Court. (R. 10-1, PageID# 517-518; Exh. 42). In his memorandum in Support of Jurisdiction, Petitioner raised substantially the same issues as propositions of law that he raised as assignments of error below. (R. 10-1, PageID# 519-549; Exh. 43). On April 8, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 10-1, Exh. 44).

**E.   Resentencing**

**1. November 12, 2014 *Nunc Pro Tunc* Entry**

As stated above, on direct appeal, the state appellate court found a remand was necessary, explaining that Counts 30 and 31 should have merged at sentencing and remanded "for resentencing at which time the state may choose which of the two offenses it will pursue for sentencing." (R. 10-1, PageID# 192; Exh. 9). On November 12, 2014, the trial court issued a *nunc pro tunc* entry in accordance with the state appellate court's remand order and sentenced Thompson to an aggregate sentence of thirty-one years and six months—a year shorter than the previous sentence, after running the convictions for Counts 30 and 31 concurrently. (R. 10-1,

---

[2] The Cuyahoga County Public Defender's Office filed a Motion for Leave to file an Amicus Curiae brief in support of Thompson's application, which the state appellate court granted. (R. 10-1, PageID# 476-490; Exhs 37-39).

PageID# 263-265; Exh. 20).

On December 10, 2014, Thompson, *pro se*, filed a notice of appeal. (R. 10-1, PageID# 266; Exh. 21). On March 29, 2015, Thompson, through court-appointed counsel, raised the following assignments of error:

> 1.   The trial court erred in journalizing a sentence greater than twenty-eight and one-half years and journalizing the imposition of financial sanctions.
>
> 2.   The trial court erred in failing to give jail credit.

(R. 10-1, PageID# 279-296; Exh. 22).

On September 24, 2015, the state appellate court affirmed in part and reversed in part. The state appellate court found that Thompson's argument—that his sentence could not exceed 28 and a half years—was barred by *res judicata*, as it could have been raised on direct appeal. (R. 10-1, PageID# 317; Exh. 24). However, the state appellate court found that "as no journal entry was ever issued to correct the trial court's improper imposition of a fine, costs and restitution — which were either ordered suspended or not imposed at the sentencing hearing — the November 12, 2014 nunc pro tunc entry is incomplete and a new nunc pro tunc entry must be issued ...." *Id.* at PageID# 321. With respect to the second assignment of error, the court acknowledged that the trial court failed to make any determination concerning Thompson's entitlement to jail-time credit. *Id.* at PageID# 324. However, the court overruled Thompson's assignment of error, finding that his remedy is to file a motion with the trial court. *Id.* at PageID# 324-325.

On October 5, 2015, Thompson, through new counsel Paul Mancino, Jr., filed a motion for reconsideration arguing that Thompson had a right to be present at the resentencing pursuant to Ohio Rule of Criminal Procedure 43. (R. 10-1, PageID# 326-329; Exh. 25). On October 15, 2015, the state appellate court denied the motion. (R. 10-1, PageID# 335; Exh. 27).

On November 23, 2015, Thompson, through attorney Mancino, filed a notice of appeal with the Ohio Supreme Court (R. 10-1, PageID# 336; Exh. 28) and raised the following propositions of law in his memorandum in support of jurisdiction:

I.     A Defendant has been denied his Constitutional right where a court fails to secure the presence of a Defendant and instead issues a Nunc Pro Tunc Resentencing Entry.

II.    A Defendant has been denied Due Process of Law when a trial court fails to follow a mandate issued by an appellate court.

(R. 10-1, PageID# 338-364).

On February 24, 2016, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 10-1, PageID# 365; Exh. 30).

**2. February 9, 2016 *Nunc Pro Tunc* Entry**

On February 9, 2016, the trial court issued a *nunc pro tunc* journal entry to correct the clerical errors identified in the second remand order from the state appellate court. Thompson was again sentenced to an aggregate term of 31 years and 6 months. (R. 10-1, PageID# 366-369; Exh. 32).

On March 11, 2016, Thompson, through counsel, filed a notice of appeal (R. 10-1, PageID# 370; Exh. 32) and raised the following assignments of error in his brief:

1.     Defendant was denied Due Process of Law when the court entered a *nunc pro tunc* sentencing entry without the appearance of Defendant nor a waiver of his appearance.

2.     Defendant was denied Due Process of Law when the Court entered a *nunc pro tunc* entry which did not reflect what had actually occurred previously in the case.

3.     Defendant was denied Due Process of Law when the trial court failed to follow the mandate from the Court of Appeals concerning jail time credit.

(R. 10-1, PageID# 381-392; Exh. 33).

On October 20, 2016, the state appellate court affirmed the judgment of the trial court.[3] (R. 10-1, PageID# 404-410; Exh. 35). The court again reiterated that Thompson's remedy to obtain jail-time credit is to file a motion with the trial court. *Id.* at PageID# 410.

Respondent represents that Thompson did not appeal this appellate decision to the Supreme Court of Ohio. (R. 10, PageID# 59).

### 3. March 29, 2016 Journal Entries

While Thompson's prior appeal was pending, the trial court issued two journal entries indicating that Thompson had been in court with counsel on March 29, 2016. (R. 10-1, PageID# 550-551; Exhs. 45 & 46). The first journal entry indicated that the court suspended fines, court costs, and restitution; and that jail-time credit would be awarded. (R. 10-1, PageID# 550; Exh. 45). The second entry clarified that the State elected to have Thompson sentenced on Count 31 (rather than Count 30), and the court then sentenced him to a term of 12 months on that count, again noting that the sentences would be served consecutively. (R. 10-1, PageID# 551; Exh. 46).

On April 28, 2016, Thompson, through counsel, filed a notice of appeal (R. 10-1, PageID# 552; Exh. 47) and raised the following assignments of error in his appellate brief:

1. Defendant was denied due process of law and subjected to multiple punishments when the court failed to merge all of the individual counts into count one.

2. Defendant was denied due process of law when the court did not conduct a *de novo* resentencing as the sentencing was void.

3. Defendant was denied due process of law when the court failed to articulate which of the consecutive sentences was to be served in which order.

---

[3] The state appellate court noted that the *nunc pro tunc* entry imposed the correct sentence and had removed the imposition of restitution, fines, and costs, as ordered in the state appellate court's second remand order. (R. 10-1, PageID# 408; Exh. 35).

4.   Defendant was denied due process of law when the court imposed consecutive sentences without making any required statutory findings.

5.   Defendant was subject to unconstitutional multiple punishments when defendant was convicted and sentenced on Count 51 which contained all of the checks which were the subject of the previous 49 counts.

6.   Defendant was denied due process of law when the court imposed a fine when fines were abrogated in prior appeals.

7.   Defendant was subjected to a cruel and unusual punishment when the court imposed a thirty one and a half (31½) year sentence in non-violent property offenses.

(R. 10-1, PageID# 561-579; Exh. 48).[4]

On October 18, 2016, the state appellate court issued a *sua sponte* order requiring the parties to show cause why the appeal should not be dismissed for lack of a final appealable order or jurisdiction. (R. 10-1, PageID# 609; Exh. 54). Both parties submitted briefs opposing dismissal. (R. 10-1, PageID# 610-618; Exh. 55 & 56). On December 23, 2016, the state appellate court dismissed the appeal for lack of a final appealable order. (R. 10-1, PageID# 619; Exh. 57). Respondent represents that Petitioner did not appeal the decision. (R. 10, PageID# 60).

**F.    Post-Conviction Motion for Final Appealable Order**

On March 20, 2017, Thompson, *pro se*, moved for a final appealable order, asking that the court to resentence him "consistent with the laws and statutes of this State, after which it may issue a final, appealable order." (R. 10-1, PageID# 620; Exh. 58). In response, the State filed proposed findings of facts and conclusions of law. (Exhibit 59, Entry). On May 17, 2017, the

---

[4] Thereafter, Thompson, *pro se*, moved for leave to file a supplemental brief, which the state appellate court denied for failure to show good cause. (R. 10-1, PageID# 580-582; Exhs. 49 & 50). On August 17, 2016, Thompson, *pro se*, moved to dismiss the appeal for lack of jurisdiction arguing that the second journal entry, dated April 4, 2016, was not a final appealable order. (R. 10-1, PageID# 583-580; Exh. 51). The state appellate court ordered the motion stricken because Thompson was represented by counsel. (R. 10-1, PageID# 591; Exh. 52).

trial court issued three journal entries. The first indicates that the revised sentencing entry is being issued pursuant to the state appellate court's December 23, 2016 order dismissing for lack of a final, appealable order. (R. 10-1, PageID# 637; Exh. 60). The second contains findings of fact and conclusions of law denying Thompson's petition for post-conviction relief. (R. 10-1, PageID# 641-649; Exh. 61). The third journal entry grants him a total of 85 days of jail-time credit. (R. 10-1, PageID# 650; Exh. 62).

On June 5, 2017, Thompson, *pro se*, filed a notice of appeal (R. 10-1, PageID# 652; Exh. 63), and he raised the following assignments of error in his appellate brief:

1. The trial court failed to conduct a de novo resentencing denying Appellant his Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

2. The trial court failed to conduct a full allied offense determination and to merge all allied offenses, violating Appellant's protection and Double Jeopardy as provided in the Fifth Amendment to the U.S. Constitution, and his right to Due Process under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

3. The trial court failed to make required findings under R.C. 2929.14(C)(4) before imposing consecutive sentences at Appellant's resentencing, in violation of his Due Process protections under the Fourteenth Amendment to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

4. The trial court violated Appellant's Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution, when it engaged in vindictive sentencing against him.

(R. 10-1, PageID# 655; Exh. 64).

On January 18, 2018, the state appellate court affirmed the judgment of the trial court. (R. 10-1, PageID# 708-714; Exh. 66). The court overruled the first two assignments of error, explaining that the trial court was not obligated to conduct a *de novo* resentencing, but was

13

merely instructed to address the merger of counts 30 and 31, which it did. *Id.* at PageID# 713. The third and fourth assignments of error were determined to be barred by *res judicata. Id.*

On February 20, 2018, Thompson, *pro se*, filed a notice of appeal with the Ohio Supreme Court. (R. 10-1, PageID# 715; Exh. 67). In his memorandum in support, he raised as propositions of law the same issues he raised as assignments of error below. (R. 10-1, PageID# 718; Exh. 68). On May 9, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 10-1, PageID# 740; Exh. 69).

## G. Motions to Correct Void Sentence and for Resentencing

On November 1, 2018, Petitioner filed a motion to correct a void sentence pursuant to Ohio Rule of Criminal Procedure 47. (R. 10-1, PageID# 741; Exh. 70). On November 26, 2018, Petitioner filed a motion for resentencing with proper post-release control notification. (R. 10-1, PageID# 753; Exh. 71). In two separate orders, the trial court denied both motions. (R. 10-1, PageID# 788-790; Exhs. 72 & 73).

Respondent asserts that between May 3 and May 9, 2019, Thompson filed four notices of appeal on two case numbers—Ohio Ct. App. Eighth Dist. (Cuyahoga) Nos. CA 19 108520, and CA 19 108530. (R. 10-1, PageID# 792-801; Exh. 74).

According to the state appellate court's docket, on June 3, 2019, the court *sua sponte* consolidated the two cases as they both arise from CR 11-553640. On August 12, 2019, Thompson raised the following assignments of error:

1. The trial court violated Thompson's due process protections, as provided by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution, and the *Saxon* prohibition against use of the sentencing-package doctrine, when it failed to separately impose the proper term of post-release control on each count of his conviction.

14

2.  Thompson's sentencing entry is not a final, appealable order, which violates his due process protections as provided by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution, and this court had no jurisdiction to hear his earlier appeals.

3.  Thompson's sentence is void and contrary to law due to the trial court sentencing him to maximum prison terms on all counts for non-violent property offenses without proper consideration of O.R.C. 2929.11 and 2929.12, in violation of his due process protections as provided by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

*State v. Thompson ("Thompson VI")*, 2020-Ohio-671 at ¶1, 2020 Ohio App. LEXIS 601, 2020 WL 953526 (Ohio Ct. App. Feb. 27, 2020). The state appellate court found the first assignment of error to be without merit, finding that "the trial court was not required to pronounce at the sentencing hearing, nor in the sentencing journal entry, the applicable postrelease control sanction for each individual offense." *Id.* at ¶30. The second assignment of error was also overruled, the court finding that "the trial court's sentencing entry complied with the requirements of Crim.R. 32(C), disposed of all pending matters in the underlying criminal case, and therefore, constituted a final, appealable order." *Id.* at ¶37. Finally, with respect to the third assignment of error, the court determined that "[b]ecause Thompson's present claim could have and should have been raised in his previous appeal, it is now barred by the doctrine of res judicata." *Id.* at ¶45.

On June 9, 2020, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. Thompson*, 2020-Ohio-3174, 159 Ohio St.3d 1408, 146 N.E.3d 592 (Ohio 2020).

**H.  Federal Habeas Petition**

Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus on January 9, 2019, asserting

the following grounds for relief:

**GROUND ONE**: The trial court failed to conduct a de novo resentencing, denying Petitioner his Due Process protections under the 14th Amendment to the U.S. Const.

*Supporting Facts*: Upon reviewing Petitioner's original direct appeal, the Ohio Eighth District Court of Appeals remanded the case back to the trial court for resentencing to remedy an allied offense error. The trial court did allow Petitioner an opportunity for allocution, during which he asked the court to consider whether there were other counts in his conviction that should have merged. The court informed Petitioner that it had lost jurisdiction to change his sentence, and thereafter failed to conduct any further allied offense determination, and also failed to make any findings pursuant to ORC 2929.14(C)(4) before reimposing consecutive sentences. The court also failed to respond to Petitioner's request regarding the order in which his sentences were to be served.

**GROUND TWO**: Trial court failed to merge allied offenses in violation of Petitioner's protection against Double Jeopardy under the 5th Amend. to the U.S. Const.

*Factual Support*: The following sets of offenses are allied offenses of similar import, pursuant to ORC 2941.25(A), that the trial court failed to merge at sentencing or resentencing: the forgeries in Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28 all should have merged into the theft in Count 50. Each count of forgery listed a check number, date, and amount of money that Petitioner used it to forge. The total sum of the amounts listed in Counts 2-28 was $18,985.22. In Count 50, Petitioner was charged with the theft of $18,985.22. Counts 43, 44, 45 and 47, which all charged Petitioner with identity fraud under ORC 2913.49(B)(1). All four counts contain the following identical, carbon copy language:

> "The grand jurors, on their oaths, further find that the Defendant(s) unlawfully did, without the express or implied consent of ***, use, obtain, or possess any personal identifying information of *** with intent to represent ***'s personal identifying information as his own personal identifying information and the value of the credit, property, services, debt, or other legal obligation involved in the violation or course of conduct was $400 or more and less than $5000."

In Counts 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41 and 42 Petitioner was also charged with identity fraud. However, while each count alleged a different victim, they were all alleged to have occurred "On or about October 17, 2008" and all of the offenses were charged as having been committed from the same location – Petitioner's apartment. Petitioner's direct appeal challenged that Counts 2-28

should have merged with Count 50; that Counts 43, 44, 45 and 47 all should have merged into one count, and Counts 31-42 all should have merged into one count.

**GROUND THREE**: Trial court failed to make findings under ORC 2929.14(C)(4) before imposing consecutive sentences, violating Due Process under 14th Amendment.

*Factual Support*: While the trial court made a set of findings pursuant to ORC 2929.14(C)(4) in support of imposing consecutive sentences at Petitioner's original sentencing hearing, at Petitioner's resentencing hearing, which followed a remand from the appellate court, after merging Counts 30 and 31 the trial court failed to make a new findings under the statute before reimposing consecutive sentences.

**GROUND FOUR**: Trial court engaged in vindictive sentencing, violating Petitioner's Due Process protections under the 5th and 14th Amendments to the U.S. Constitution.

*Factual Support*: Prior to opting to take his case to trial, Petitioner was offered a plea deal by the State of Ohio in which, in exchange for his plea of guilty to the Count 1 charge of engaging in a pattern of corrupt criminal activity in violation of ORC 2923.32(A)(1), the State would dismiss all of the remaining counts in the indictment. Had petitioner accepted the plea offer the longest sentence the trial court could have imposed was 8 years. Petitioner rejected the deal and the case proceeded to trial where he was found guilty on all counts. At sentencing, the prosecution asked for a sentence of 20 years. Instead, trial court Judge Shirley Strickland Saffold imposed an aggregate sentence of 32 ½ years (reduced to 31 ½ years at resentencing). At both sentencing and resentencing Petitioner's defense raised a concern over vindictive sentencing. Petitioner had two primary codefendants in the present case—Janell Calloway and Diontae Adams—both of whom did accept plea deals offered by the State of Ohio. Calloway was sentenced to only 3 years and Adams was sentenced to only 1 year. During sentencing and resentencing, Judge Saffold made numerous derogatory comments about Petitioner, such as: "You have been a con man all your life." And "You came in with all of this was a game." The Cuyahoga County (Ohio) Public Defender's Office presented an amicus curiae brief supporting this ground.

(R. 1, PageID# 5, 7, 8, 11).

### III. Exhaustion and Procedural Default

**A.    Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

## B.     Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[5] *Id*.

---

[5] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief that are significant to determining whether a claim has

---

petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an independent and adequate state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001); *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough, however. A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

## C.    Analysis

Respondent asserts that grounds one and four are procedurally defaulted, because they are barred by *res judicata*. (R. 10, PageID# 74, 81-85).

### 1. Ground Four: Vindictive Sentencing

In his fourth ground for relief, Petitioner argues that the trial court engaged in vindictive sentencing when he received a significantly longer sentence after trial than the State provided through a plea offer. (R. 1. PageID# 11). While the basis of Petitioner's vindictive sentencing claim in his petition stems from some comments by the trial judge and that his sentence was significantly longer than the sentences of his co-defendants (*Id.*), his traverse explicitly makes the accusation that his over thirty-year sentence was punishment for his decision to exercise his right to a jury trial. (R. 25, PageID# 1957).

Respondent asserts that Petitioner knew at his initial sentencing in February 2013 that he received a sentence far greater than the eight-year term he was offered in a plea agreement, but did not raise a vindictive sentencing claim on direct appeal. (R. 10, PageID# 83). In fact, Respondent argues, Petitioner neglected to raise a vindictive sentencing claim in the first four appeals he filed in state court. *Id.* Respondent contends this argument was first raised during Thompson's fifth appeal. *Id.*

Respondent's assertion is not entirely accurate. On direct appeal, in his fourth assignment of error, which was raised by Petitioner *pro se*, Thompson expressly argued that: (1) his sentence was not consistent with that of sentences for similar offenders; and (2) the court "lodged on [a]

trial tax claim by stacking and maximizing each charge."[6] (R. 10-1, PageID# 168; Exh. 7). The

state appellate court permitted and purported to address Petitioner's *pro se* arguments. *State v.*

*Thompson*, 2014-Ohio-4198, ¶3, 2014 Ohio App. LEXIS 4112 (Ohio Ct. App. Sep. 23, 2014)

("Thompson filed a supplemental pro se brief in his [direct] appeal and this court addressed

Thompson's pro se arguments.") In actuality, the state appellate court, on direct appeal, only

appears to have addressed the first argument concerning the proportionality of his sentence

compared to co-defendants, and not his "trial tax" argument. *Thompson I*, 2014-Ohio-202 at

¶¶24.

On direct appeal before the Supreme Court Ohio, Thompson, *pro se*, raised seven

propositions of law, with the seventh proposition most closely approximating his fourth

assignment of error on direct appeal. (R. 10-1, PageID# 198-213; Exh. 11). Therein, Thompson

asserted the trial court abused its discretion by handing down a sentence he claims was

unreasonable, arbitrary, and unconscionable, which he believed amounted to cruel and unusual

punishment under the Eighth Amendment. *Id.* at PageID# 211-212. Thompson further claimed

that his sentence was grossly disproportionate to his co-defendants' sentences and was

significantly longer than the twenty-year sentence recommended by the State. *Id.* However,

Thompson's memorandum submitted to the Ohio Supreme Court is *bereft* of any argument that

the trial judge acted vindictively because Thompson opted to proceed to trial rather than accept a

plea. Thus, Thompson did not raise this specific vindictiveness "trial tax" argument on a full

round of direct review. "Issues not presented at each and every level [of the state courts] cannot

---

[6] While Petitioner did not expressly use the term "vindictive," his claim that he was punished
more harshly for exercising his right to a jury trial was plainly raised. Thus, the essence of his
claim was raised in his appellate brief.

be considered in a federal habeas corpus petition." *Hill v. Jackson*, No. 3:19-CV-1196, 2020 WL 6809117, at *10 (N.D. Ohio Oct. 15, 2020) (citations omitted), *report and recommendation adopted*, 2020 WL 6802130 (N.D. Ohio Nov. 19, 2020).

Thus, Thompson's failure to fairly present this specific vindictiveness argument to the Ohio Supreme Court "constitutes an adequate and independent state procedural rule barring habeas review." *Hines v. Brunsman*, 2009 U.S. Dist. LEXIS 125337, 2010 WL 750176 at *18 (N.D. Ohio Feb. 26, 2010) (citing *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004)).

Nevertheless, in his traverse, in responding to Respondent's procedural default arguments, Thompson argues that *res judicata* is inapplicable under the facts of this case. (R. 25, PageID# 1943-1944, 1956-1957). Thompson avers that the state appellate court's finding on direct appeal required a *de novo* resentencing under Ohio law, citing *State v. Wilson*, 2011-Ohio-2669, ¶7, 129 Ohio St.3d 214, 215-16, 951 N.E.2d 381, 384 (Ohio 2011). *Id.*

In *Wilson*, the Ohio Supreme Court held that "[w]hen a cause is remanded to a trial court to correct an allied-offenses sentencing error, the trial court must hold a new sentencing hearing for the offenses that remain after the state selects which allied offense or offenses to pursue." 2011-Ohio-2669 at ¶7 (also finding that "[a] defendant is not barred by *res judicata* from raising objections to issues that arise in a resentencing hearing, even if similar issues arose and were not objected to at the original sentencing hearing."). Without looking beyond *Wilson*, Petitioner's argument—that *res judicata* does not apply herein—is not, at first glance, unpersuasive. Nevertheless, the *Wilson* decision stated "[f]urther, only the sentences for the offenses that were affected by the appealed error are reviewed de novo; the sentences for any offenses that were not affected by the appealed error are not vacated and are not subject to review." *Id.* at ¶15. In

23

addition, *Wilson*, as subsequently applied by Ohio courts, undermines Thompson's

interpretation—that a remand on one aspect of a sentence requires a resentencing on those

aspects of the sentence that were not challenged.

In fact, the state appellate court decided Thompson's sixth appeal not long after he filed

the traverse herein. The state appellate court, with respect to the original sentencing, recognized

the potential applicability of *Wilson*, but distinguished it as follows:

> {¶ 43} We recognize that this court did find that Thompson's convictions for
> telecommunications fraud and identity fraud in Counts 30 and 31 were allied
> offenses of similar import and should have merged for sentencing. "When a cause
> is remanded to a trial court to correct an allied-offenses sentencing error, the trial
> court must hold a new sentencing hearing for the offenses that remain after the
> state selects which allied offense or offenses to pursue." *State v. Wilson*, 129 Ohio
> St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶7. It is well settled that although a
> remand for a new sentencing hearing anticipates a *de novo* sentencing, there are a
> number of limitations that inherently narrow the scope of that particular
> resentencing hearing. *Id.* at ¶ 5. "[O]nly the sentences for the offenses that were
> affected by the appealed error are reviewed *de novo*; the sentences for any
> offenses that were not affected by the appealed error are not vacated and are not
> subject to review" by the trial court. *Id.*, citing *State v. Saxon*, 109 Ohio St.3d 176,
> 2006-Ohio-1245, 846 N.E.2d 824, paragraph three of the syllabus. *See also State
> v. Grayson*, 8th Dist. Cuyahoga No. 106578, 2019-Ohio-864.

> {¶ 44} "The doctrine of res judicata does not bar a defendant from objecting to
> issues that arise at the resentencing hearing or from the resulting sentence." *Id.* at
> ¶30. Specifically, the Ohio Supreme Court explained that a defendant may
> challenge the trial court's consideration of R.C. 2929.11 when fashioning the new
> sentence. *Id.* at ¶ 31. However, the scope of an appeal from the new sentencing
> hearing is limited to issues that arose at the new sentencing hearing. *Id.* at ¶ 30,
> citing *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 40
> ("The scope of an appeal from a new sentencing hearing is limited to issues that
> arise at the new sentencing hearing.").

> {¶ 45} Based on the foregoing, it is evident that Thompson was permitted to
> challenge issues that arose during his March 29, 2016 resentencing hearing. Thus,
> while law of the case and principles of *res judicata* applied to those convictions
> and sentences that were affirmed and unaffected by the limited remand in
> *Thompson I*, Thompson could have disputed the trial court's compliance with
> R.C. 2929.11 and 2929.12 when it imposed a sentence on the remaining identity
> fraud offense. In this case, however, the record reflects that Thompson did not

challenge the trial court's compliance with the requirements of R.C. 2929.11 and 2929.12 in his appeal from the resentencing hearing. *See Thompson IV*, 8th Dist. Cuyahoga No. 105866, 2018-Ohio-179. Because Thompson's present claim could have and should have been raised in his previous appeal, it is now barred by the doctrine of *res judicata. See State v. Ray*, 8th Dist. Cuyahoga No. 101142, 2014-Ohio-4689, ¶ 11 (challenges to the trial court's consideration of R.C. 2929.11 and 2929.12 are barred by *res judicata*).

*Thompson VI*, 2020-Ohio-671 at ¶¶43-45. Similar to the case at bar, another state appellate court decision also found that a defendant had to be resentenced on a merger issue where the State had to elect which offense or offenses to pursue for sentencing, but expressly pointed out that "the sentences unaffected by our decision shall not be altered on remand." *State v. Evans*, 2020-Ohio-3968 at ¶134, 2020 Ohio App. LEXIS 2868, 2020 WL 4544753 (Ohio Ct. App. Aug. 6, 2020); *see also State v. Daboni*, 2020-Ohio-832 at ¶23, 2020 Ohio App. LEXIS 771 (Ohio Ct. App. Feb. 13, 2020) (vacating new sentences on appeal "due to the fact that the trial court exceeded its authority on remand and patently lacked jurisdiction to re-sentence Appellant on those non-remanded counts.").

Furthermore, a similar, if not identical, argument was rejected by a recent decision of this district. In *Shinholster v. Bradshaw*, following a remand from federal court to state court to correct an allied-offenses error, the petitioner asserted he was entitled to a *de novo* resentencing hearing on his remaining drug-trafficking conviction and 15-year sentence also based on *State v. Wilson*. No. 5:12 CV 2495, 2020 U.S. Dist. LEXIS 56837 at *5 (N.D. Ohio Apr. 1, 2020) (Polster, J.). The state appellate court therein also rejected Shinholster's argument for the same reasons as the state appellate court in *Thompson VI*, explaining that "[i]f a trial court sentences an offender on allied offenses of similar import, the resulting sentence is contrary to law, but it is not void," rendering the sentence subject to correction. *State v. Shinholster*, No. 27687, 2015-Ohio-5098 at ¶¶7-8, 2015 WL 8348748 (Ohio App. Dec. 9, 2015) (explaining that "the sentences

25

for any offenses that were not affected by the appealed error are not vacated and are not subject to review."). The *Shinholster* decision noted that since the state appellate court's 2015 decision, Shinholster had "gone back and forth between state trial and appeals courts, and this district court and the Sixth Circuit Court of Appeals raising the same argument repeatedly — to no avail." 2020 U.S. Dist. LEXIS 56837 at *5.

Ultimately, while Petitioner may disagree with the state appellate court's application of state law in *Thompson VI* or with the other state appellate court interpretations of *Wilson*, this court cannot grant a habeas petition for a perceived violation of state law.[7] Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68). A federal habeas court does not function as an additional state appellate court reviewing state courts decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988); *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state.").

Petitioner also argues that a line of decisions from the Sixth Circuit prevents this court from finding that his claim is procedurally defaulted due to *res judicata*. As this court construes Petitioner's argument, he asserts that he is permitted to challenge *all* aspects of his original conviction and sentence once a resentencing has occurred—even those portions of his sentence that were affirmed on direct appeal or unchallenged—and not only those portions subject of the remand order. (R. 25, PageID# 1939-1944, citing *King v. Morgan*, 807 F.3d 154, 159 (6th Cir.

---

[7] See discussion in Part IV-A below concerning errors of state law.

2015) (finding that a resentencing creates a new judgment that permits the inmate to challenge

the original conviction without clearing the second-or-successive hurdles applicable to habeas

cases); *In re Stansell*, 828 F.3d 412 (6th Cir. 2016) (finding that the habeas rules applying to

second or successive petitions did not apply because even a partial resentencing created a new

judgment for federal habeas purposes); *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016) ("finding

that a new sentence creates a new judgment, thereby restarting AEDPA's one-year statute of

limitations.")). These cases, however, do not stand for the proposition that Thompson

advances—that habeas courts are precluded from enforcing a procedural default stemming from

*res judicata* in state courts simply because there has been a resentencing.

> Reasonable jurists would not disagree with the district court's determination that this court's decisions in *Crangle, Stansell*, and *Askew* do not support Williamson's challenges to the November 6, 2014, resentencing and journal entry. These cases stand for the proposition that a resentencing to impose a term of post-release control creates a new judgment that (1) allows a defendant to file a habeas petition challenging both the underlying conviction and sentence without satisfying the requirements for filing a second or successive petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), *see In re Stansell*, 828 F.3d at 417, 419; *Askew*, 636 F. App'x at 349, and (2) resets the statute of limitations for filing such petitions, *see Crangle*, 838 F.3d at 675. None of these cases identify or create a constitutional right. Nor do they mandate any sort of procedure or process that must be followed in a state resentencing proceeding. And to the extent Williamson challenged the state court's resentencing process, no reasonable jurist could disagree with the district court's determination that Williamson failed to state a cognizable claim for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

*Williamson v. May*, No. 20-3084, 2020 U.S. App. LEXIS 21604, at *12-13 (6th Cir. July 10,

2020). Further on point is another decision from within this district, which expressly stated that

"it is clear that Ohio courts continue to routinely hold that a resentencing does not permit a

defendant to resurrect claims that could have been raised on direct appeal and do not stem from

the resentencing. That is, Ohio courts continue to apply the *res judicata* bar to such claims."

*Barclay v. Tibbles*, No. 5:13 CV 124, 2018 U.S. Dist. LEXIS 226369, at *25 (N.D. Ohio Apr.

20, 2018) (Knepp, M.J.), *report and recommendation accepted by* 2019 U.S. Dist. LEXIS 73545

(N.D. Ohio May 1, 2019) (Lioi, J). This court has also previously explained that:

> The Sixth Circuit Court of Appeals has repeatedly held that Ohio's doctrine of *res judicata* doctrine is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions. *See, e.g., Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("This court has held that [the] rule [requiring claims based on facts in the record to be presented on direct appeal] is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test."); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000). Thus, as a general rule, a state court's decision to forego addressing the merits of a claimed constitutional error is not problematic, and Askew's complaint that he was deprived of a merit-based review due to the application of *res judicata* is not a cognizable claim.
>
> The Sixth Circuit has opined that "the procedural default rule delineated by *Perry* and *Cole* is a matter of state law." *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001), *cert. denied*, 535 U.S. 940, 122 S. Ct. 1323, 152 L. Ed. 2d 231 (2002). The *Greer* decision acknowledged that "a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law." *Id.* (*citing Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000) ("Principles of comity and finality equally command that a habeas court can not revisit a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal.")).

*Askew v. Bradshaw*, No. 5:12-cv-00131, 2017 U.S. Dist. LEXIS 123390, at *35-37 (N.D. Ohio

Feb. 21, 2017) (Ruiz, M.J.), *report and recommendation accepted* by 2017 U.S. Dist. LEXIS

123384 (N.D. Ohio Aug. 4, 2017) (Gaughan, J.) The *Askew* decision further explained that the

Ohio Supreme Court has held that "although the doctrine of *res judicata* does not preclude

review of a void sentence, *res judicata* still applies to other aspects of the merits of a conviction,

including the determination of guilt and the lawful elements of the ensuing sentence." (*Id. citing*

*State v. Fischer*, 2010-Ohio-6238, 942 N.E.2d 332, 128 Ohio St.3d 92, 102 (Ohio 2010)).[8]

---

[8] Though not directly germane to this court's disposition of the petition, it bears noting that

Therefore, the court recommends finding that Petitioner has procedurally defaulted ground four of his habeas petition to the extent he argues the trial court sentenced him vindictively for not agreeing to a plea offer.

### 2. Ground Three: Statutory Findings Necessary to Impose Consecutive Sentences

In his third ground for relief, Petitioner asserts that the trial court, upon remand for resentencing, failed to make findings under O.R.C. § 2929.14(C)(4) before imposing consecutive sentences, thereby ostensibly violating due process. (R. 1). While Petitioner concedes that the trial court made such findings at his original sentencing hearing, Petitioner contends that the trial court was obligated to make those same findings again despite the state appellate court remanding so that two convictions could merge for sentencing as originally intended by the trial court.

Respondent has argued that this ground for relief is not cognizable, but did not argue the claim is procedurally defaulted. (R. 10, PageID# 78-81). "Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition." *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 524, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)). The Sixth Circuit Court

---

significant changes have recently occurred in Ohio jurisprudence regarding whether a sentence is "void" or merely "voidable." *See, e.g., State ex rel. Romine v. McIntosh*, 2020-Ohio-6826, 2020 WL 7636005 (Ohio Ct. App. Dec. 23, 2020) (finding that a trial court's imposition of multiple sentences for offenses it deemed to be subject to merger under the allied-offenses statute results in a voidable sentence, and that *State v. Williams*, which had held that such a sentence is "void," is no longer good law) 148 Ohio St.3d 403, 71 N.E.3d 234 (Ohio 2016), *abrogated by State v. Henderson*, 2020-Ohio-4784, 161 Ohio St.3d 285 (Ohio 2020); *see also State v. Harper*, 160 Ohio St.3d 480, 159 N.E.3d 248 (Ohio 2020) (observing that "when a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void[,] [and] ... a voidable judgment may be set aside only if successfully challenged on direct appeal.").

of Appeals has recently observed that "a federal court may raise a procedural default defense *sua sponte* even if the defense is waived by the warden," further noting that "[r]easonable jurists would not debate otherwise." *Raglin v. Shoop*, No. 19-3361, 2020 U.S. App. LEXIS 21035, at *7 (6th Cir. July 7, 2020) (citing *Lovins*, 712 F.3d at 295 ("even if the State does waive a procedural default defense, we may raise it *sua sponte*.")).

In his fourth appeal, Thompson essentially raised the same argument he now raises in ground three, asserting that he was denied due process when the trial court issued a journal entry resentencing him without making the requisite statutory findings under O.R.C. § 2929.14.[9] (R. 10-1, PageID# 576-577, Exh. 48). As noted above, the state appellate court ultimately dismissed that appeal for lack of a final appealable order. (R. 10-1, PageID# 619; Exh. 57).

In his fifth appeal, Thompson again raised the same argument in his third assignment of error.[10] (R. 10-1, PageID# 680-690). The state appellate court found that this issue was barred by

---

[9] Notably, Thompson's brief contains no argument regarding how the trial court's failure to make the referenced statutory findings amounted to a violation of due process (R. 10-1, PageID# 576-577). In fact, the only mention of "due process" is the heading of the argument that makes the conclusory allegation that a due process violation has occurred. "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *accord Schwarzman v. Miller*, No. 1:15 CV 885, 2016 U.S. Dist. LEXIS 188725, at *34 (N.D. Ohio Sep. 13, 2016) (Parker, M.J.) (finding grounds for relief were unexhausted where they only generally asserted a "due process" violation in state court but argued exclusively violations of Ohio laws or rules); *Alston v. Voorhies*, No. 07CV2284, 2010 U.S. Dist. LEXIS 104778, at *10 (N.D. Ohio Sep. 30, 2010) (Vecchiarelli, M.J.) ("it is not enough to simply mention 'due process,' " to fairly present a federal constitutional claim in state court). "While a petitioner need not cite chapter and verse of constitutional law, general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Beach v. Moore*, 343 Fed. App'x 7, 11 (6th Cir. 2009) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal quotation marks and citation omitted)), Thompson's unexplained "due process of law" claim is "precisely the type of 'general allegations' that [the Sixth Circuit has] found do not 'fairly present' the substance of a federal claim to a state court." *Beach*, 343 Fed. App'x at 11 (citations omitted).

[10] Although Thompson's argument in his fifth appellate brief was significantly more developed

*res judicata. State v. Thompson* ("*Thompson V*"), 2018-Ohio-179 at ¶11, 2018 Ohio App. LEXIS 213, 2018 WL 460100 (Ohio Ct. App. Jan. 18, 2018).

Because the state appellate court enforced the sanction of *res judicata* against Petitioner regarding the substance of his claim in ground three, the court recommends finding ground three is defaulted. The court is aware that Petitioner has not had the opportunity to specifically address the issue of procedural default, as it is being raised by the court *sua sponte*. Petitioner, however, retains the ability to file objections to this report and recommendation, and may present further argument that he properly exhausted the claim contained in ground three. Petitioner will also have the opportunity to argue his default should be excused if he can establish both cause and prejudice. Finally, the court will address the assignment of error below to the extent it presents a cognizable claim.

### 3. Ground Two: Merger/Double Jeopardy

In his second ground for relief, Petitioner asserts that three sets of his convictions should have merged under Ohio law, and that the state court's failure to merge a number of his sentences violated the Double Jeopardy clause of the Constitution. (R. 1).

Petitioner only raised a double jeopardy/merger argument with respect to two of his convictions on direct appeal. After his direct appeal, that the state courts steadfastly refused to consider Thompson's other merger arguments as falling outside the scope of the state appellate court's original remand order. Nevertheless, Respondent has not argued that this ground for relief is procedurally defaulted. Respondent has argued that the state appellate court found

---

in terms of state law than in his fourth appellate brief, it was again based exclusively on state law with only a passing reference to the Due Process Clause of the Fourteenth Amendment in the general heading of his assignment of error. (R. 10-1, PageID# 680; Exh. 64).

Petitioner's merger claim meritless (R. 10, PageID# 77-78), but, in actuality, the state courts

never considered the argument, determining that the only merger issue remanded for

resentencing concerned Counts 30 and 31, and declining to consider whether other counts should

have merged. *Thompson V*, 2018-Ohio-179 at ¶10. Because it appears that the state courts

enforced a default against Petitioner's merger claims—those unrelated to Counts 30 and 31—the

court again raises the issue of procedural default *sua sponte*.

Again, on direct appeal, Thompson only argued that Counts 30 and 31 should have

merged at sentencing, and did not raise a merger or double jeopardy argument with respect to

any other claims. (R. 10-1, Exhs. 5 & 7). Thompson could have raised merger with respect to any

of his convictions on direct appeal, as his arguments were all based on facts that were already

part of the record on appeal.

> Ohio courts have set forth a default rule barring consideration of claims that
> should have been raised on direct appeal. *See Cole*, 443 N.E.2d at 171; *State v.
> Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, 108 (1967). Ohio courts have
> consistently held that claims that can be adjudicated based on facts in the record
> can only be presented on direct appeal. *See, e.g., State v. Lentz*, 70 Ohio St.3d
> 527, 639 N.E.2d 784, 785 (1994). This court has held that this rule is regularly
> and consistently applied by Ohio courts as required by the four-part *Maupin* test.

*Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *accord Dabney v. Warden, Chillicothe Corr.

Inst.*, No. 1:19-CV-956, 2021 WL 602580, at *5 (S.D. Ohio Feb. 16, 2021) ("As applicable to

this case, Ohio does have a relevant procedural rule which requires that constitutional claims

which can be decided on the basis of the appellate record must be presented on direct appeal or

otherwise be barred by *res judicata*.").

In his application to reopen his direct appeal, Thompson ironically argued that counsel

was ineffective for raising an allied offenses issue, rather than arguing his sentence was cruel and

unusual under the Eighth Amendment. (R. 10-1, PageID# 416, 418; Exh. 36). The remainder of

his application did not argue that appellate counsel was ineffective for failing to argue

Thompson's other convictions and sentences violated double jeopardy. *Id.* In any event, the state

appellate court denied the application to reopen explaining as follows:

> {¶ 3} The application to reopen is barred by the doctrine of res judicata because, with leave of court, Thompson filed a supplemental pro se brief in his appeal and this court addressed Thompson's pro se arguments. The Ohio Supreme Court has found that res judicata applies under these circumstances. *State v. Webb*, 72 Ohio St.3d 248, 1995-Ohio-53, 648 N.E.2d 1354. In *Webb*, the court observed that the "appellant had expressed discontent with his appellate counsel on direct appeal and filed pro se assignments of error. Therefore, appellant could then have filed the assignments of error he now seeks to litigate in his application to reopen." Accordingly, Thompson's application for reopening is precluded by the doctrine of res judicata. *Id.*; *see also State v. Cowan*, 8th Dist. Cuyahoga No. 97877, 2013-Ohio-1172, ¶4, citing *State v. Tyler*, 71 Ohio St.3d 398, 643 N.E.2d 1150 (1994); *State v. Boone*, 114 Ohio App.3d 275, 683 N.E.2d 67 (7th Dist.1996); and *State v. Williams*, 8th Dist. Cuyahoga No. 69936, 1996 Ohio App. LEXIS 4796, 1996 WL 631080 (Oct. 31, 1996), *reopening disallowed*, Motion No. 280441 (Apr. 24, 1997).

*State v. Thompson ("Thompson II")*, 2014-Ohio-4198 at ¶3, 2014 WL 4748364 (Ohio Ct. App.

Sep. 23, 2014). Therefore, while Thompson did not raise a claim that his other sentences violated

the double jeopardy clause, the state appellate court clearly applied *res judicata* to bar all the

claims Thompson actually attempted to raise, as they could all have been raised on direct appeal.

After the trial court attempted to fix its erroneous sentencing entry by merging Counts

30 and 31 as ordered by the state appellate court on direct appeal, Thompson again appealed,

arguing his sentence should have been 28.5 years, because that was the term discussed at

sentencing by all parties—albeit based on erroneous arithmetic—and that the State acquiesced to

a 28.5 year term. (R. 10-1, PageID# 279-296; Exh. 22). Again, Thompson did not argue that any

of his other convictions violated double jeopardy. *Id.* The state appellate court ruled as follows:

> {¶ 13} Although Thompson purports to challenge the trial court's November 12, 2014 nunc pro tunc entry in this appeal, *his complaints regarding the length of his sentence actually relate back to the trial court's original March 13, 2013*

*sentencing entry*. It was the March 13, 2013 sentencing entry in which the trial court first indicated that Thompson had been sentenced to an aggregate prison sentence in excess of the 28½ year aggregate prison sentence Thompson now claims the parties agreed to at the sentencing hearing. There is no dispute that Thompson could have raised this issue in his prior appeal but failed to do so. Indeed, Thompson specifically argued in his prior appeal that the trial court abused its discretion by imposing a total sentence of 32½ years. *Thompson I* at ¶ 21.

{¶ 14} Where an argument could have been raised in a prior appeal, res judicata dictates that it is inappropriate to consider that same argument on a second appeal. *State v. Davis*, 8th Dist. Cuyahoga No. 99376, 2013–Ohio–4905, ¶ 9; *see also State v. Brooks*, 8th Dist. Cuyahoga No. 98380, 2012–Ohio–5292, ¶ 8 (because defendant could have raised, but did not raise, any issue regarding sentencing entry in his direct appeal, the issue was barred by res judicata). Thompson does not get another bite at the apple and cannot avoid the res judicata bar to his claim that the trial court committed error in sentencing him to an aggregate sentence of more than 28½ years simply by characterizing his attack on his sentence as a challenge to the trial court's November 12, 2014 nunc pro tunc entry. *See, e.g., State v. Grenter*, 11th Dist. Ashtabula No. 2011-A-0013, 2011-Ohio-6003, ¶12 (where defendant could have raised any issue regarding his conviction, the substance of his sentence, the sentencing entry or the sentencing hearing on direct appeal, he may not now find his way into court through a side entrance and upon the back of what appears to be a pre-textual motion and appeal therefrom); *see also State v. Spragling*, 11th Dist. Ashtabula No. 2015-A-0008, 2015-Ohio-2598, ¶ 10 ("As a general proposition, sentencing errors can only be contested through a direct appeal of the sentencing judgment. Res judicata bars an appellant from asserting sentencing errors in appeals from subsequent judgments when such issues could have been litigated in an appeal of the earlier sentencing entry.").

*State v. Thompson* ("*Thompson III*"), 2015-Ohio-3882, 2015 Ohio App. LEXIS 3753, 2015 WL 5608269 (Ohio Ct. App. Sep. 24, 2015).

While Thompson raised a different sentencing claim than the one herein, the state appellate court again enforced *res judicata* to bar any claims attacking the original March 13, 2013 sentencing entry. Thompson's argument that other counts should have merged as allied offenses also attacks the original sentence. The state appellate court plainly found that Ohio's clearly established appellate rules do not permit a second bite at the unaffected portions of a sentence simply because a new sentencing entry was issued after a remand correcting a limited

error.

Thompson finally attempted to raise a double jeopardy argument in his fourth appeal, arguing that the first 49 counts should have merged with Count 51. (R. 10-1, PageID# 565; Exh. 48). After the state appellate court dismissed the appeal for lack of a final appealable order (R. 10-1, PageID# 619; Exh. 57), Thompson revived the argument, this time contending that trial court violated his right against double jeopardy by not conducting a *de novo* resentencing where the court could have taken up the allied offenses/merger issue anew. (R. 10-1, PageID# 669-680). The argument was contained in his second assignment of error. *Id.* The state appellate court determined,

> {¶ 10} As to Assignments of Error I and II, the trial court was not obligated to conduct a de novo resentencing. The trial court was merely instructed to address the potential merger of counts 30 and 31, which in fact, it did do. The trial court also addressed the fine, costs and restitution that had previously been ordered by journal entry but not imposed in open court. The trial court has suspended all of the aforementioned financial sanctions.

*Thompson V*, 2018-Ohio-179 at ¶11. Although the state appellate court did not expressly include the phrase "res judicata" when overruling the second assignment of error, it plainly did not address the claim *on the merits*. The state appellate court consistently held throughout all of Thompson's multiple appeals that arguments attempting to attack the undisturbed portions of the original sentence were barred by *res judicata*, because they could have been raised on direct appeal. By explicitly holding that a *de novo* sentencing was not mandated on the fifth appeal, the state appellate court was clearly standing by its prior holdings that only the remanded portion of the sentence remained subject to challenge, and all other challenges to the original sentence were precluded.

Given the procedural history in state court, this court cannot construe the state appellate

court's holding, which declined to address the merits of Petitioner's double jeopardy/allied offenses claim, as anything other than an unambiguous enforcement of *res judicata*—a clearly established and regularly followed state procedural rule that precludes review by this court. As discussed above, Ohio jurisprudence has explained that *State v. Wilson*, 2011-Ohio-2669 does not prevent the state courts from applying *res judicata* simply because a remand occurred on an allied offenses issue. Petitioner sets forth no cause to excuse his default. Therefore, it is recommended that ground two be dismissed as procedurally defaulted.

### 4. Ground One: Lack of a *De Novo* Resentencing

Without any meaningfully developed argument, Respondent contends that Ground One is procedurally defaulted due to the doctrine of *res judicata*. This court, however, addresses ground one on the merits below to the extent it raises a cognizable claim. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law).

### IV.   Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable

37

application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

### A.     Ground One: Lack of a *De Novo* Resentencing

Petitioner's ground one asserts that the trial court failed to conduct a *de novo* resentencing after his case was remanded by the state appellate court on direct appeal. (R. 1).

It bears noting that on direct appeal, the only offenses Petitioner argued should have merged were Counts 30 and 31: "it is clear that according to the State, Appellant engaged in a single course of conduct with a single animus for his actions; that the trial court should have merged his convictions in Counts 30 and 31 for sentencing purposes pursuant to R.C. 2941.25 ...." (R. 10-1, PageID# 142; Exh. 5). Petitioner's counsel correctly pointed out that the trial judge, at the first sentencing, specifically stated that "[Counts] 30 and 31 are concurrent to each other, but consecutive to any other sentences. They're running together because I find those are the same acts, just one transaction.... I think they're allied offenses." (*Id.* citing R. 10-2; Tr. 1263-1264). Nevertheless, the journal entry imposed twelve months for Count 30 and 12 months for Count 31, and those sentences were ordered to run consecutively rather than concurrently. (R. 10-1, PageID# 121; Exh. 3). On direct appeal, Petitioner did not argue that any other offenses should have merged. (R. 10-1, PageID# 141-144; Exh. 5).

The state appellate court's decision on direct appeal sustained the assignment of error and remanded, noting that "[d]uring sentencing, the court ordered the telecommunications fraud and identity theft counts [Counts 30 and 31] to run concurrent to each other stating, 'because I find those are the same acts, just one transaction.'" *Thompson I*, 2014-Ohio-202 at ¶20. Despite Petitioner's contention that the trial court should have held a *de novo* resentencing, the state

38

appellate court categorized its own decision differently.

In deciding Thompson's second appeal, the state appellate court observed that "[o]n appeal, this court held that Thompson's convictions for telecommunications fraud and identity fraud in Counts 30 and 31 should have merged for sentencing. The court affirmed Thompson's remaining convictions and remanded the case for resentencing *on the counts that should have merged.*" *State v. Thompson* ("*Thompson II*"), 2015-Ohio-3882 at ¶5, 2015 Ohio App. LEXIS 3753, 2015 WL 5608269 (Ohio Ct. App. Sep. 24, 2015) (emphasis added). The court explicitly found that "the trial court appropriately used a nunc pro tunc entry to correct the error in its March 13, 2013 sentencing journal entry with respect to the calculation of Thompson's aggregate prison sentence," and further remarked that "[a]lthough trial courts generally lack authority to reconsider their own valid final judgments in criminal cases, they retain continuing jurisdiction to correct certain types of errors in judgments by nunc pro tunc entry to reflect what the court actually decided." *Id.* at ¶15 (citations omitted). The state appellate court, while finding that the "November 12, 2014 nunc pro tunc entry [was] incomplete," took no issue with the format of the order. *Id.* at ¶18. To the contrary, the court specifically ordered that "a new nunc pro tunc entry must be issued correcting all of the mathematical and clerical errors in the March 13, 2013 sentencing journal entry." *Id.*

In deciding Thompson's third appeal, the state appellate court reiterated that "[w]e also concluded that issuing the nunc pro tunc was an appropriate manner to correct the mathematical error with respect to the sentencing error, because it was undisputed that the aggregate prison sentence imposed totaled 31 1/2 years." *State v. Thompson* ("*Thompson IV*"), 2016-Ohio-7404 at ¶4, 2016 Ohio App. LEXIS 4318, 2016 WL 6139108 (Ohio Ct. App. Oct. 20, 2016).

In deciding Thompson's fifth appeal, the state appellate court observed that "***the trial***

39

***court was not obligated to conduct a de novo resentencing***. The trial court was merely

instructed to address the potential merger of counts 30 and 31, which in fact, it did do."

*Thompson V*, 2018-Ohio-179 at ¶10 (emphasis added).

Petitioner contends that, by failing to conduct a *de novo* resentencing, he was deprived of

the opportunity to ask the court to consider whether there were other counts in his conviction that

should have merged as allied offenses. *Id.* This argument is redundant of the argument raised in

ground two, which has been defaulted.

Petitioner further complains that the court failed to make any findings pursuant to O.R.C.

§ 2929.14(C)(4) before imposing consecutive sentences. Such an argument is rooted exclusively

in an alleged violation of state law, and therefore, is not cognizable on federal habeas review and

should be dismissed on that basis. "It is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions. In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state

law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere

error of state law' is not a denial of due process.") (citation omitted)).

While Thompson makes the conclusory statement that the failure to conduct a *de novo*

resentencing resulted in a due process violation, he cites no authority and makes no argument to

support such a conclusion. (R. 1). Also absent from Petitioner's ground one is any meaningful

argument that a state court's failure to conduct a *de novo* resentencing hearing under these

circumstances is contrary to or an unreasonable application of clearly established federal law as

established by the United States Supreme Court. Petitioner's traverse does not remedy this

40

shortcoming. Instead, he simply makes additional conclusory declarations that "violations of rights … are surely cognizable upon federal review." (R. 25, PageID# 1939). Petitioner then mentions the Double Jeopardy Clause, but offers no further explanation as to why he believes the failure to hold a *de novo* resentencing hearing violates due process where the errors identified by the appellate court were addressed in subsequent journal entries. *Id.* at 1940. Although *pro se* pleadings must be liberally construed and, at times, require active interpretation, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985), these principles are not without limits and do *not* transform the court into an advocate seeking to conjure the strongest and most successful arguments. *See, e.g., Erwin v. Edwards*, 22 Fed. App'x 579, 580 (6th Cir. 2001); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

The court, therefore, recommends finding that ground one fails to assert a cognizable claim and should be denied.

**B.      Ground Two: Allied Offenses and the Double Jeopardy Clause**

In his second ground for relief, Petitioner asserts that Counts 2 through 28 should have merged into the theft conviction in Count 50; that Counts 43 through 45 and Count 47 should have merged due to "carbon copy language" in the indictments; and, that Counts 31 through 42 should have merged because the identity fraud counts were the same save for the name of the victim. (R. 1). Implicit in Petitioner's argument is the assumption that a failure to merge convictions pursuant to Ohio law results in a violation of the Double Jeopardy Clause. *Id.*

Respondent argues that ground two fails to state a federal constitutional claim, and that the state legislature clearly intended punishments for all the counts of which Petitioner was convicted except for Counts 30 and 31. (R. 10, PageID# 74-78).

The Sixth Circuit Court of Appeals has addressed double jeopardy issues in an

41

analogous case. There, the Sixth Circuit explained:

> The Double Jeopardy Clause protects individuals from, inter alia, multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). Resolution of the double jeopardy question is a matter of legislative intent, and a habeas court is bound by a state court's determination as to whether the state legislature intended multiple punishments for a single criminal incident. *Volpe v. Trim*, 708 F.3d 688, 696–97 (6th Cir. 2013). Moreover, in determining a state legislature's intent, "a federal court is bound by a state court's construction of that state's own statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989). Under Ohio Revised Code section 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However, "[w]here the defendant's conduct ... results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." Ohio Rev. Code § 2941.25(B). Thus "this statute, not the *Blockburger* test," determines whether a defendant has been punished twice for the same offense under Ohio law in violation of the federal Double Jeopardy Clause. *Jackson v. Smith*, 745 F.3d 206, 213 (6th Cir. 2014).

*Henley v. Marquis*, No. 18-4209, 2019 WL 9047226, at *6 (6th Cir. Dec. 13, 2019); *see also*

*Kouns v. Sheldon*, No. 5:13CV1074, 2015 WL 4774657, at *4 (N.D. Ohio Aug. 12, 2015) ("A

claim under the Double Jeopardy Clause thus requires analysis of state law and legislative

intent.")

Despite asserting that Thompson only raised the argument that Counts 30 and 31 should

have merged on direct appeal, Respondent has not argued that this ground for relief is

unexhausted or procedurally defaulted. (R. 10, PageID# 77). In his fifth appeal, Petitioner argued

in his second assignment of error that the trial court violated the Double Jeopardy Clause by

failing to conduct a full allied offenses determination and to void all allied offenses. (R. 10-1,

PageID# 655; Exh. 64). The state court, however, never addressed the second assignment of

error on the merits, as it simply determined that the trial court was only instructed to address the

potential merger of Counts 30 and 31 on remand, which it did. *Thompson V*, 2018-Ohio-179 at

¶10. Respondent does not squarely address the fact that the state appellate court never addressed this double jeopardy issue on the merits. (R. 10, PageID# 77-78).

Where a "state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). Nevertheless, the Supreme Court has held that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99, 131 S. Ct. 770, 78485, 178 L. Ed. 2d 624 (2011); *cf. Turner v. Gray*, No. 5:18 CV 01285, 2020 WL 2572322, 2020 U.S. Dist. LEXIS 89658, at *3 (N.D. Ohio May 20, 2020) (Gaughan, J.) (applying a "*de novo*, rather than deferential, standard of review … given that the state did not explicitly address them on the merits."). Regardless of which standard of review the court applies, Thompson's claims are plainly insufficient to show a violation of the Double Jeopardy Clause.

With respect to Counts 31 through 42 alleging multiple counts of identity fraud, Petitioner concedes that each count alleged a different victim, but focuses on the fact that the date of the offense for each is alleged to have occurred on or about October 17, 2008. (R. 1; R. 10-1, PageID# 110-114; Exh. 1, Indictment).

The Ohio Court of Appeals has explained the applicability of imposing multiple sentences for criminal acts that involve multiple victims. One such example is found in the case *State v. Tapscott*, which explained:

> [*P41] The Ohio Supreme Court has stated that multiple sentences for a single act committed against multiple victims is permissible where the offense is defined in terms of conduct toward "another as such offenses are of dissimilar import; the import being each person affected. *State v. Jones*, 18 Ohio St.3d 116, 118, 18 Ohio B. 148, 480 N.E.2d 408 (1985). Thus, a person can be sentenced on a count

43

of aggravated vehicular homicide for each victim killed because the offense is defined in terms of recklessly causing the death "of another." *Id.* Similarly, a person who set one fire to a structure could be sentenced for six counts of aggravated arson, one for each victim, because arson was defined in terms of creating a substantial risk of serious harm to another person. *State v. Franklin*, 97 Ohio St.3d 1, 2002 Ohio 5304, 776 N.E.2d 26, ¶ 48.

*State v. Tapscott*, 2012-Ohio-4213, ¶ 41, 978 N.E.2d 210, 219 (Ohio Ct. App. Sep. 14, 2012).

Not surprisingly, the state courts have found that there are no free victims for an offender, and the fact that a crime was committed on the same date or in a single transaction is irrelevant. *See, e.g., State v. Chaney*, 2012-Ohio-4933 at ¶26 (Ohio Ct. App. Oct. 25, 2012) ("Where a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each victim such that the offenses are not allied, and the defendant can properly be convicted of and sentenced on multiple counts."); *Petzold v. Jones*, 619 F. Supp. 2d 1143, 1150 (W.D. Okla. 2008) ("The United States Supreme Court has never extended the Double Jeopardy Clause to multiple punishments for multiple crimes simply because the events had involved a single transaction."), *affirmed by* 349 Fed. Appx. 295, 2009 U.S. App. LEXIS 22668 (10th Cir. 2009), *writ of certiorari denied* 560 U.S. 955 (2010). Thus, Petitioner's argument that Counts 31 through 42 should have merged is plainly without merit.

Petitioner also contends that Counts 43, 44, 45 and 47 should have merged into one count. (R. 1). While some courts have found that undifferentiated carbon-copy indictments may indeed violate a petitioner's ability to plead double jeopardy from a future prosecution, *see, e.g., Valentine v. Konteh*, 395 F.3d 626, 636 (6th Cir. 2005), even the *Valentine* decision noted that the crux of the issue was that "given the way Valentine was indicted and tried [for 20 counts of undifferentiated sexual abuse of a minor], it would have been incredibly difficult for the jury to consider each count on its own. The jury could not have found Valentine guilty of Counts 1–5,

44

but not Counts 6–20. Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest. Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents." *Id.* at 633. Other decisions applying *Valentine* have also found no constitutional violation where the state court identified specific examples of abuse in a victim's testimony of separate criminal acts or where the State satisfied the constitutional requirement differentiating between counts through the presentation of evidence. *See, e.g., Luks v. Kelly*, No. 1:09 CV 2751, 2011 WL 2493051, at *2 (N.D. Ohio June 23, 2011) (Zouhary, J.); *see also Bruce v. Welch*, 572 Fed. App'x 325, 331 (6th Cir. 2014) (noting that *Valentine*, a Sixth Circuit decision, does not constitute clearly established federal law as determined by the U.S. Supreme Court, and also finding no constitutional violation where the evidence at trial supported the number of convictions); *Williams v. Kelly*, No. 1:15-CV-00184, 2016 WL 6311234, at *13 (N.D. Ohio Mar. 31, 2016) ("Petitioner's brief does not demonstrate that the evidence introduced at trial failed to sufficiently differentiate between the multiple charges of which he was convicted"), *report and recommendation adopted*, 2016 WL 6277163 (N.D. Ohio Oct. 27, 2016).

Here, Thompson's arguments are conclusory, as he has not pointed to any deficiency with respect to the evidence presented at trial concerning these multiple counts or demonstrated that the evidence presented at trial was incapable of supporting four separate and distinct incidents of identity fraud all related to the fraudulent use of the identity of C.T. It is not this court's role to scour the record to develop an argument on Petitioner's behalf. It is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *see also Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d

861 (6th Cir. May 11, 2006).

Furthermore, even a cursory review of the evidence shows that the primary witness who participated in the fraud using C.T.'s identity, Theresa M. Frescki, testified that Thompson took her to go cash counterfeit checks, that she cashed multiple checks in C.T.'s name, but could not recall exactly how many. (R. 22-3, Tr. 582-596). She further identified a number of different checks with C.T.'s name on them bearing the witness's fraudulent signature. *Id.* Thus, the court cannot conclude that the facts adduced at trial were insufficient to differentiate and sustain four identically worded counts of identity fraud involving the victim C.T.

Finally, Petitioner asserts that the forgery convictions in Counts 2 through 28 should have merged with the theft count, because the sum total of the forged checks in the former was $18,85.22—the same amount of the theft conviction. (R. 1). In *State v. Ruff*, the Ohio Supreme Court stated that :

> A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

2015-Ohio-995, ¶ 25, 143 Ohio St.3d 114, 121, 34 N.E.3d 892, 898 (Ohio 2015). In his traverse, Petitioner relies on a state appellate court decision, which was decided before *Ruff*, that held under the facts of its case that:

> the passing (or 'uttering') of the check is the forgery offense and his receipt of money was the theft offense. However, these two offenses occurred simultaneously, as a result of the same conduct, and arose from the same animus. Therefore, under *Johnson* we agree with appellant that under the facts present in this case these offenses are allied offenses of similar import.

46

*State v. Taylor*, 2013-Ohio-472 at ¶13, 2013 WL 543603 (Ohio Ct. App. Feb. 6, 2013).

The validity of *Taylor* has been doubted in light of *Ruff. See, e.g., State v. Pettus*, 2019-Ohio-2023 at ¶¶79-80, 2019 WL 2244756 (Ohio Ct. App. May 24, 2019) (finding the appellant had separately committed forgery and theft offenses and, therefore, did not merge); *State v. Hayes*, 2017-Ohio-7718 at ¶23, 2017 WL 4176962 (Ohio Ct. App. Sep. 21, 2017) ("Although the grand theft was facilitated by the passing of bad checks, and thus could be considered a single course of conduct, the crimes were all based on separate and distinct acts."). One Ohio court has explained that "[t]he act of creating spurious checks is distinct from the act of using those checks to obtain another's property." *State v. Smith*, 2014-Ohio-5076 at ¶¶26-27, 2014 Ohio App. LEXIS 4952, 2014 WL 6139627 (Ohio Ct. App. Nov. 17, 2014) (observing that "[t]he offense of Forgery by the fabrication or creation of spurious writings is not allied with the offense of Theft by deception, i.e., they do not correspond to such a degree that the commission of the one offense constitutes the commission of the other."). "[C]ourts have found theft and forgery not to be allied offenses of similar import," because the "act of obtaining another's property is distinct from the act of fabricating documents." *State v. Walker*, 2016-Ohio-8615 at ¶53, 2016 Ohio App. LEXIS 5431 (Ohio Ct. App. Dec. 16, 2016) (internal quotations and citations omitted). It is clear that the Ohio courts have found that the legislature intended to separately punish forgery and theft offenses, and a federal court is bound by Ohio court's construction of Ohio statutes. As such, Thompson's Double Jeopardy argument is without merit.

Finally, to the extent Thompson's argument that certain offenses merged is based on his belief that Ohio law was misapplied when determining whether his convictions constituted allied offenses of similar import, such a claim is not cognizable. This court has explained, in an analogous case, why such a state-law argument is not cognizable on federal habeas review,

stating:

> Petitioner's first ground for relief, alleging that the trial court erred by not merging his convictions as allied offenses, is based on the application of state law, *see* Ohio Revised Code § 2941.25(A), and not on the Double Jeopardy Clause. *See, e.g., Minor v. Wainwright*, No. 19-3206, 2019 WL 2489656, at *2 (6th Cir. June 6, 2019). A challenge to the state court's application of Ohio's allied offenses statute is not cognizable on federal habeas review. *Minor*, 2019 WL 2489656, at *2 (*citing Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014), *cert. denied*, 574 U.S. 848 (2014)); *Hawkins v. Warden, Ross Corr. Inst.*, 2019 U.S. Dist. LEXIS 188166, 2019 WL 5586884, at *1 (S.D. Ohio Oct. 30, 2019). Federal habeas relief is not available for a claimed violation of state law; thus, any alleged violation of Ohio law is not properly before this court. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

*Walker v. Marquis*, No. 1:18CV0806, 2020 U.S. Dist. LEXIS 65149, at *1 (N.D. Ohio Jan. 21, 2020) (Ruiz, M.J.), *adopted by, Walker v. Jackson*, 2020 U.S. Dist. LEXIS 65478, at *1 (N.D. Ohio Apr. 14, 2020) (Nugent, J.)

Therefore, even if the court were to excuse the default of ground two as determined above, it is further recommended that ground two be dismissed on the merits as well.

**C.      Ground Three: Statutory Fact-Finding and Consecutive Sentences**

To reiterate, in his third ground for relief, Petitioner asserts that the trial court failed to make findings under O.R.C. § 2929.14(C)(4) before imposing consecutive sentences, thereby ostensibly violating due process. (R. 1). Petitioner concedes that the trial court made such findings at his original sentencing hearing (R. 1, PageID# 9), but argues that the trial court was obligated to make those same findings again after a new *nunc pro tunc* entry journalized his convictions based upon the state appellate court's remand instructions.

Respondents contends that ground three is not cognizable, arguing that petitioner's claim is, at its heart, a claim that state law was violated. (R. 10, PageID# 79-81). The court agrees. Reading the petition and traverse as a whole, it is clear that the crux of Thompson's argument is

that he believes the trial court was obligated to perform a *de novo* resentencing, at which time,

Respondent asserts that the trial court was again required to make statutory findings under Ohio

law before imposing consecutive sentences. Thompson's claim here merely rehashes the claim

he raised in ground one, which this court has determined to be non-cognizable as an issue of state

law. (*See* IV-A, *supra*).

In his traverse, Petitioner suggests the Supreme Court, in *Oregon v. Ice*, 555 U.S. 160

(2009), held that the Constitution does not permit the imposition of consecutive sentences

without findings justifying the imposition of a longer sentence. (R. 25, PageID# 1954). This

interpretation of *Ice* is neither supported by the plain language of the decision nor the accepted

interpretation of *Ice* by the decisions within this Circuit. There, the Supreme Court held that the

Sixth Amendment does not prohibit States from assigning to judges, rather than to juries, finding

of facts necessary to impose consecutive, rather than concurrent, sentences for multiple offenses.

*Id.*

An identical argument to Thompson's has already been rejected by the Sixth Circuit

Court of Appeals. In *Reed v. Jenkins*, No. 16-4687, 2017 WL 6210790 (6th Cir. Jun. 21, 2017), a

habeas petitioner, relying on *Ice*, asserted that a the trial court violated state and federal law by

imposing consecutive sentences without making required factual findings. The *Reed* decision,

noting that the district court had found *Ice* inapposite to such an argument, further indicated that

"[r]easonable jurists could not disagree." *Id.* at *3; *see also Clementson v. Tibbals*, No. 1:12-CV-

1317, 2013 WL 1788447, at *11 (N.D. Ohio Mar. 29, 2013) ("In *Ice*, the Supreme Court ... did

***not***, however, require judicial fact-finding before the imposition of consecutive sentences.")

(emphasis added), *report and recommendation adopted*, 2013 WL 1789584 (N.D. Ohio Apr. 25,

2013); *Jaffal v. Bradshaw*, No. 1:11CV1549, 2013 WL 3337404, at *7 (N.D. Ohio July 2, 2013)

("*Ice* did not frame the issue as a question of due process, nor did the Court refer to due process in its decision."); *Ahmed v. Hall*, No. 1:09 CV 624, 2011 WL 2970953, at *2 (N.D. Ohio Apr. 1, 2011) ("Notably, *Ice* did not hold that [judicial] factfinding was required as a matter of federal constitutional law [before imposing consecutive sentences]") *report and recommendation adopted*, 2011 WL 2970945 (N.D. Ohio July 20, 2011) (Pearson, J.)

Therefore, even to the extent Thompson attempts to base his claim in federal constitutional law rather than state law, it remains without merit.

## D. Ground Four: Vindictive Sentencing

In his fourth ground for relief, Petitioner argues that the trial court engaged in vindictive sentencing when he received a significantly longer sentence after trial than the State offered before trial. (R. 1. PageID# 11). As stated above, the court recommends finding that Thompson's argument—that the trial judge engaged in vindictive sentencing on the basis that his sentence was allegedly retribution for not taking a plea—is procedurally defaulted.[11]

Furthermore, it is questionable whether Thompson's ground for relief even raises as cognizable claim. The Sixth Circuit has stated,

> To the extent that Lister tried to raise a federal due process claim for vindictive sentencing, reasonable jurists would not debate whether he was entitled to habeas relief because that claim arises only when a trial judge gives a defendant a more severe sentence after he successfully attacks his conviction on appeal. *See Alabama v. Smith*, 490 U.S. 794, 798 (1989). Lister does not cite any clearly established Supreme Court precedent that holds that a vindictive sentencing claim arises when the trial judge decides to impose consecutive sentences in the first instance. Otherwise, reasonable jurists would not debate the district court's conclusion that a judge's decision to impose consecutive sentences is a question of state law that is not cognizable in federal habeas proceedings. *See Jones v.*

---

[11] Thompson's traverse focuses almost exclusively on this aspect of his claim, which was never presented to the Ohio Supreme Court on direct appeal and is procedurally defaulted. (R. 25, PageID# 1956-1961). In the interests of judicial economy, the court foregoes addressing this aspect of his claim on the merits.

*Smith*, No. 94-5259, 1995 WL 45631, at *1 (6th Cir. Feb. 3, 1995).

*Lister v. Burton*, No. 18-2017, 2018 WL 6437437, at *4 (6th Cir. Nov. 21, 2018); *Walker v. Warden, Chillicothe Corr. Inst.*, No. 1:19-CV-233, 2020 WL 8458647, at *13 (S.D. Ohio Nov. 5, 2020) ("The presumption of vindictiveness is inapplicable in this case where the initial sentencing is at issue"), *report and recommendation adopted*, 2021 WL 415060 (S.D. Ohio Feb. 5, 2021); *Payne v. Smith*, 207 F. Supp. 2d 627, 640 (E.D. Mich. 2002) ("to the extent that Petitioner claims that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief."). As in *Lister*, Thompson has not been subjected to a greater sentence after an appeal. Similarly, his argument, which concerns an Ohio court imposing sentences consecutively rather than concurrently, intrudes upon the province of state law.

In any event, the law concerning vindictiveness was aptly set forth in the *Fears* decision cited by Respondent. There, the court explained:

> A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *See Wasman v. United States*, 468 U.S. 559, 568, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984). However, the mere imposition of a longer sentence than a defendant would have received had he pled guilty does not automatically constitute vindictive or retaliatory punishment. *Williams v. Jones*, 231 F.Supp.2d 586, 599 (E.D. Mich. 2002). "[T]he Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused." *Id.* (citing *Corbitt v. New Jersey*, 439 U.S. 212, 223–24, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)). Although a defendant is free to accept or reject a plea bargain, *once that bargain has been rejected, "the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is presumptive evidence of judicial vindictiveness." Id. To demonstrate a constitutional violation, a defendant must "affirmatively prove actual vindictiveness"* on the basis of the record. *Wasman*, 468 U.S. at 569.
>
> In the present case, Fears was sentenced after being convicted at a trial following his decision to reject a plea bargain. Fears contends that the sentencing court was

vindictive because the judge took into consideration his "lack of remorse" and the harm to the victim. (Doc. No. 1, p. 9.) The state appellate court, in reviewing whether the sentence was too harsh as opposed to vindictive, concluded that the trial judge assessed the appropriate sentencing factors under the Ohio Revised Code and properly sentenced Fears within the authorized range of prison terms. *See, e.g., Williams*, 231 F.Supp.2d at 598; *see also Polk v. Trombley*, 2007 WL 2746614, *8, Case No. 2:06cv10568 (E.D. Mich, Sept. 19, 2007). Fears cannot meet his burden that the sentence was vindictive by arguing that the trial court improperly took into account matters that Ohio law specifically directs judges to consider, *i.e.*, lack of remorse and harm to the victim. Fears fails to show that his sentence was vindictive.

*Fears v. Miller*, No. 1:09CV698, 2009 WL 6315341, at *10–11 (N.D. Ohio Dec. 1, 2009)

(emphasis added), *report and recommendation adopted*, 2010 WL 1258096 (N.D. Ohio Mar. 30,

2010).

Because Thompson was not the recipient of greater sentence after an appeal, there is no

presumption of vindictiveness, rather his burden to receive habeas relief is to establish *actual*

vindictiveness. The court finds Thompson's general complaints about the length of his sentence

when compared to the offered plea fails to establish vindictiveness. Actual vindictiveness is also

not established simply because a co-defendant received a far lesser sentence for a smaller role in

the criminal offenses.[12] Finally, the trial judge's statement at sentencing that Thompson has been

a "con man" all his life also fails to establish actual vindictiveness, especially when viewed in

the context in which it was made. (R. 10-2, PageID# 830; Tr. 1240). The trial judge spoke after

the State had recounted decades of prior convictions spanning from the 1970s to the then present

---

[12] Petitioner's complaint in this regard ignores some glaring differences between himself and his co-defendant, Janell Calloway. First, the evidence adduced at trial clearly showed that Thompson was the ringleader of the criminal enterprise. Second, Calloway's three-year sentence was the product of a plea agreement where she received a lesser sentence in exchange for her decision to cooperate truthfully with the prosecution. (R. 22-4, Tr. 798-799). Thus, judging Thompson's sentence in relation to Calloway's sentence is an inapplicable comparison, and does not establish actual vindictiveness.

date, convictions that included crimes of dishonesty such as receiving stolen property, misuse of a credit card, possession of stolen credit cards, forging instruments, forgery, conspiracy to counterfeit securities, and bank fraud. *Id*. at Tr. 1236-1237. Therefore, the court recommends finding ground four is without merit to the extent it is not already defaulted.

### V. Conclusion

For the foregoing reasons, it is recommended that Thompson's Petition be DENIED.

s/ David A. Ruiz
United States Magistrate Judge

Date: January 14, 2022

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).**